***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Plaintiff has not shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act. *Page 2 
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. The date of the alleged injury by accident is June 30, 2009.
5. An employment relationship existed between Plaintiff and Defendant-Employer during some or all of the time period of the previous paragraph.
6. Average weekly wage is to be determined at the hearing.
7. Defendant did have workers' compensation coverage on June 30, 2009, which provides for compensation for Plaintiff should the Commission decide he was injured during a compensable accident on June 30, 2009.
 ***********
The following were submitted at the hearing before the Deputy Commissioner:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Medical Records, Medical Expenses, Industrial Commission Forms, Discovery Responses, Recorded Statement of Plaintiff
3. Stipulated Exhibit Number 3, Durham Veteran's Affairs Medical Center Medical Records
 ***********
The following were received at the hearing before the Deputy Commissioner:
 DEPOSITIONS
1. Oral deposition of Scott Sanitate, M.D., taken on March 19, 2010 with Defendants' Exhibit Number 1 attached to the deposition transcript. *Page 3 
2. Oral deposition of Kenneth Price, Jr., M.D., taken on April 6, 2010 with Plaintiff's Exhibit Number 1 attached to the deposition transcript.
3. Oral deposition of Jeffrey Wainstein, M.D., taken on May 28, 2010 with Plaintiff's Exhibits Numbered 1A and 9A attached to the deposition transcript.
4. Oral deposition of Kwado Gyarteng-Dakwa, M.D., taken on July 15, 2010 with Plaintiff's Exhibit Number 1C attached to the deposition transcript.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 56 years old. He received his GED in 1976 and needed two additional classes to complete a college degree in environmental safety.
2. Prior to his employment with Defendant-Employer, Plaintiff worked with several construction companies as a foreman, superintendent and carpenter.
3. Defendant-Employer pours and finishes concrete. In June of 2007, Defendant-Employer hired Plaintiff as a safety officer, to oversee safety compliance. Plaintiff's duties included being familiar with OSHA standards and regulations, completing OSHA logs, and investigating and reporting work injuries.
4. On June 30, 2009, Plaintiff was working late at night on a project pouring a concrete slab for a new building at the Merck plant in Durham. As part of his job duties, Plaintiff was driving a golf cart to escort concrete trucks onto and from the site on a paved road. Plaintiff testified that he was escorting a concrete truck from the gate to the pump truck with the golf cart when he turned to look for the truck behind him. Plaintiff testified that the golf cart hit a bump, pothole or other unknown object, and he "heard a pop and [he] thought [he] pulled a *Page 4 
muscle." Plaintiff stated that he felt a sharp pain in his neck. Plaintiff testified that the incident occurred at about 4:30 a.m. and there was minimal lighting on that portion of the job site.
5. On the same day, and while still on the job site, Plaintiff approached Ben Benton, Plaintiff's immediate supervisor on the Merck project, and Judd Walton, Defendant-Employer's project manager at Merck. Plaintiff reported to Mr. Benton and Mr. Walton that while driving the golf cart, he turned his head and felt a pop in his neck. Mr. Benton testified that Plaintiff "said `I was bringing the truck and I turned around to see where it was and I felt a pop in my neck.'" Mr. Benton provided no testimony regarding Plaintiff hitting a hole or a speed bump.
6. On June 30, 2009, at approximately 7:00 a.m. and about three hours after feeling the pop in his neck, Plaintiff presented to Concentra Medical Center. In completing the Concentra Patient Information sheet, Plaintiff stated that "while escorting truck in gator (small all terrain) turn to see I (sic) truck was behind me and hurd (sic) a pop in my neck." The transcribed medical record reflects that "[p]atient reports that this morning he was riding in a gator and turned his neck to the left when he felt a pop in his neck. He thinks the gator may have hit a bump or rough spot when this occurred." Plaintiff reported a "history of Cervical neck fusion in 2005 for herniated disc." The Concentra Medical Centers Review of Systems sheet indicates that Plaintiff takes 30 Percocets per month for "chronic back/neck pain," along with Ibuprofen and Valium. The transcribed medical report indicates that Plaintiff "takes multiple medications on a regular basis to manage chronic pain in his back, neck and other joints. He reports that his pain is well controlled on his medications regimen." Ultimately, Plaintiff was diagnosed with a cervical strain on June 30, 2009, and was prescribed mediation and physical therapy. *Page 5 
7. On July 2, 2009, Plaintiff returned to Concentra Medical Center and stated that he "has been working their regular duty . . . reports that his neck has not improved. Neck still feels stiff." Concentra Medical Center scheduled Plaintiff to begin physical therapy the same day.
8. Plaintiff continued to treat with Concentra Medical Center through September 18, 2009. Plaintiff had continuing complaints of pain in his neck and even complained of an episode of both arms feeling weak. On September 14, 2009, Plaintiff complained that left neck pain was worsening and the medical record reflects that Plaintiff is "medically unable to work." On September 18, 2009, Concentra Medical Center referred Plaintiff to "a neurosurgeon for urgent consultation."
9. Dr. Jeffrey Wainstein of Concentra Medical Care testified at his deposition and opined that Plaintiff had a chronic underlying problem that was aggravated by an acute episode.
10. On September 29, 2009, Plaintiff was treated by Dr. Kenneth Price, a neurosurgeon with Regional Neurosurgery, PLLC, for further evaluation. Plaintiff presented with complaints of pain "in his neck on the left side and his trapezius area" and occasional numbness in his third and fourth fingers. Based on Dr. Price's physical examination and review of Plaintiff's medical history, he diagnosed Plaintiff with a cervical strain. Dr. Price stated that Plaintiff was not at "significant risk of sustaining permanent injury if he returns to work though at this time the patient states that his neck pain does not allow him to work." Dr. Price wrote Plaintiff out of work until his next scheduled follow-up visit.
11. On October 27, 2009, Plaintiff returned to Dr. Price with continued complaints of pain. Dr. Price referred Plaintiff to a pain management clinic and discharged Plaintiff from his care. The Patient Status Sheet indicates that Plaintiff "is to be out of work: From 10/27/09 through referral to Dakwa." *Page 6 
12. Dr. Price opined at his deposition that events on June 30, 2009 exacerbated a non-painful, non-symptomatic condition and that the pain reported by Plaintiff resulted in his inability to work that began on June 30, 2009.
13. On November 4, 2009, Plaintiff presented to Dr. Kwadwo Gyarteng-Dakwa of HAEG Pain Clinic, who practices anesthesiology, critical care, and pain management. Dr. Dakwa treated Plaintiff on November 4, 2009, after Plaintiff reviewed the Treatment Agreement. The medical record reflects that Plaintiff complained of "pain in neck and shoulder" and was diagnosed with "postlaminectomy syndrome of cervical region, cervicalgia, brachial neuritis or radiculitis not otherwise specified, spasm of muscle." Dr. Dakwa prescribed Plaintiff with pain medications with the instructions that the medications were only supposed to be filled at a specified pharmacy, with no early refills authorized.
14. Plaintiff was treated by Dr. Dakwa on December 2, 2009 and December 29, 2009. The medical records reflect that there appears to be compliance, that the "pill count shows no discrepancies," and that Plaintiff agreed with all terms of treatment involving controlled substances. During this time period, Plaintiff was prescribed Percocet, Valium, Flexeril, and Oxycodone and the medications were to be filled only at the Tar Heel Drug in Graham, North Carolina. Pursuant to the terms of his Treatment Agreement, Plaintiff was not supposed to get any additional medications.
15. On January 29, 2010, Plaintiff was again treated by Dr. Dakwa. The medical records reflect that "a pill count shows some discrepancies." Plaintiff was prescribed Flexeril, Valium, and Percocet.
16. Medical records from the Durham's Veteran's Affairs Medical Center ["VAMC"] reflect that Plaintiff was refilling prescriptions for Oxycodone during the same period of time *Page 7 
Plaintiff was being prescribed pain medications by Dr. Dakwa. On December 3, 2009, December 31, 2009, and February 1, 2010, Plaintiff called and received prescriptions for Oxycodone from the VAMC. Such actions taken by Plaintiff violated the terms of the Treatment Agreement with Dr. Dakwa by seeking and failing to disclose the prescriptions received from the VAMC.
17. Based upon the greater weight of the evidence that Plaintiff had a pattern of seeking the multiple prescription pain medications from Dr. Dakwa and the VAMC, the Full Commission finds Plaintiff's continued subjective complaints of neck pain are not credible. The Full Commission further finds that such subjective complaints of neck pain are no longer credible after December 29, 2009, as the behavior set forth in the preceding Findings of Facts establishes that Plaintiff was in violation of his Treatment Agreement with Dr. Dakwa by calling and receiving prescriptions for Oxycodone from the VAMC.
18. For the sole purposes of establishing prior behavior of Plaintiff, the Full Commission sets for the following events unrelated to the injury sustained on June 30, 2009:
 (a) On October 25, 2004, while employed with Pizzagalli Constructions Company, Plaintiff sustained an injury to his neck while lifting a generator. On February 14, 2005, Dr. Kenneth Price performed cervical fusion at C5-6. Plaintiff reported improvement of the numbness and weakness in the left arm, but still had neck and arm pain. After completing a Functional Capacity Evaluation, Dr. Price discharged Plaintiff from his care with a 15% permanent partial disability rating to the back. Due to Plaintiff's continued complaints of left-sided neck, shoulder and arm pain, Dr. Price recommended a second opinion. *Page 8 
 (b) On July 15, 2005, Plaintiff presented to Dr. Scott Sanitate, an expert in physical medicine and rehabilitation, for evaluation and treatment of cervical pain following the fusion. Dr. Sanitate treated Plaintiff with a number of long-acting opiates that did not provide relief of his symptoms. Plaintiff remained under Dr. Sanitate's care until October 21, 2005.
 (c) Plaintiff received treatment for various conditions including, chronic neck pain, from the Durham VAMC. On February 22, 2006, Plaintiff complained of chronic neck pain with his left arm getting weaker. On September 26, 2008, Plaintiff reported worsening of pain in his left neck, shoulder and arm, for which he prescribed Vicodin. On February 6, 2009, Plaintiff was prescribed Percocet by the VAMC for left neck and shoulder pain. Plaintiff continued to refill the prescription over the next few months. At the time of the June 30, 2009 incident, Plaintiff was taking both Percocet and Valium on a regular basis for his left neck, shoulder and arm pain.
Plaintiff testified at the hearing that he had a prior addiction to Percocet following his cervical fusion. The Full Commission finds that the above outlined events are significant to establish that Plaintiff had prior known problems with prescription pain medications that were not disclosed to Dr. Dakwa.
19. Plaintiff has not returned to any employment since September 14, 2009. He qualified and received unemployment benefits. Plaintiff testified he looks for jobs regularly online, but did not provide any additional information pertaining to his efforts to find and obtain employment. *Page 9 
20. Based on a review of all the evidence of record, including lay testimony and medical records, the Full Commission finds Plaintiff's testimony describing the June 30, 2009 golf cart incident credible.
21. The Full Commission finds that Plaintiff sustained an admittedly compensable injury to his neck as a result of a specific traumatic incident arising out of and in the course of his employment with Employer-Defendant on June 30, 2009.
22. The Full Commission finds that both Dr. Wainstein and Dr. Price opined that the June 30, 2009 incident more likely than not exacerbated Plaintiff's pre-existing cervical condition.
23. The Full Commission finds that Plaintiff was disabled from September 14, 2009, the date upon which he was determined to be "medically unable to work." The Full Commission further finds that Plaintiff has failed to prove by the greater weight of the evidence that he remained disabled after December 29, 2009.
24. The Full Commission finds that a Form 22 was submitted to the Industrial Commission, indicating that on June 30, 2009, Plaintiff's average weekly wages were $795.20 and the compensation rate was $530.16.
25. The Full Commission finds that Defendants are entitled to a credit for any unemployment benefits paid to Plaintiff for weeks that Plaintiff is owed temporary total disability benefits.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 10 
1. In order to establish a compensable injury to the back, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town ofValdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988),disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Under the specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
2. North Carolina courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 9 7-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
3. On June 30, 2009, Plaintiff sustained a compensable injury to his neck as a result of a specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant-Employer during a judicially cognizable time period. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995). This compensable accident materially accelerated or aggravated a pre-existing neck condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr.,129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
4. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been *Page 11 
unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). From September 14, 2009 to December 29, 2009, Plaintiff was medically disabled from any employment, thus satisfying the first prong of Russell. Following December 29, 2009 and continuing until the date of the hearing before the Deputy Commission, Plaintiff failed to meet his burden of proving disability as there is insufficient evidence to establish that he was completely unable to work in any type of employment.
5. As a result of his compensable injury, Plaintiff is entitled to receive temporary total disability benefits from September 14, 2009 to December 29, 2009. N.C. Gen. Stat. § 97-29.
6. As a result of his June 30, 2009 injury, Plaintiff received medical treatment, which was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability and defendants are obligated to pay for such treatment up to and including the December 29, 2009 pain clinic treatment provided by Dr. Dakwa. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Defendants are entitled to a credit against the temporary total disability benefits for the unemployment benefits paid to Plaintiff. N.C. Gen. Stat. § 97-42.
 *********** *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 12 
1. Subject to a reasonable attorney's fee approved herein, Defendants shall pay Plaintiff temporary total disability benefits at his weekly compensation rate from September 14, 2009 to December 29, 2009. Defendants are entitled to a credit for the unemployment benefits paid to Plaintiff against any temporary total disability benefits awarded.
2. Subject to the provisions of N.C Gen. Stat. § 97-25.1, Defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable neck injury sustained by plaintiff on June 30, 2009 up to December 29, 2009 when bills for the same have been approved pursuant to Industrial Commission Procedures.
3. A reasonable attorney's fee of 25% of the compensation due Plaintiff under Paragraph 1 of this Award is hereby approved for Plaintiff's counsel and shall be paid as follows: 25% of the accrued compensation due Plaintiff shall be deducted and paid in one lump directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of May 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER *Page 13 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1